## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 21 2016, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Andrew E. Grossnickle
Green, Grossnickle & Flecker, LLP
Syracuse, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: B.G. and Br.G. (Minor Children),

K.F. and Z.G.,
*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

January 21, 2016

Court of Appeals Case No.
92A05-1507-JT-980

Appeal from the Whitley Circuit Court

The Honorable James R. Heuer, Judge

Trial Court Cause Nos.
92C01-1502-JT-4 and
92C01-1502-JT-5

**Najam, Judge.**

## Statement of the Case

K.F. ("Mother") appeals the trial court's termination of her parental rights over her two minor children, Bra. G. and Bri. G. ("the children").[1] Mother presents a single issue for our review, namely, whether the trial court's judgment is clearly erroneous. We affirm.

## Facts and Procedural History

In June of 2012, the Indiana Department of Child Services ("DCS") filed petitions in which it alleged the children to be Children in Need of Services ("CHINS") due to Mother's drug use and her incarceration. Mother later admitted that the children were CHINS. Consequently, the trial court ordered Mother to participate in various services, including certain therapy and visitation sessions.

On February 26, 2015, DCS filed its petition to terminate Mother's parental rights over the children. Following a fact-finding hearing in which numerous service providers testified, the court entered the following findings of fact:

> 19. [Bra. G.] is described as a girl that [sic] likes to keep to herself. She has been diagnosed with ADHD.

---

[1] Although Z.G., the children's father, was a party to the trial court proceedings and also had his parental rights terminated, he does not participate in this appeal.

20. [Bri. G.] is described as rather protective of her older sister . . . and is attached to her foster sister . . . . [Bri. G.] enjoys doing whatever [her foster sister] does. She has nearly outgrown [Bra. G.], although she is approximately a year younger.

21. The children have been in the care of their maternal great aunt and uncle . . . since the time the children were removed . . . .

22. [Bra. G.] is involved in speech therapy, and she has an Individual Education Plan (IEP).

23. [Bra. G.] sees Dr. Hani Ahmad, a child psychiatrist at the Bowen Center in Columbia City, Indiana, as a result of her ADHD, behavior problems, and medication management.

24. Dr. Ahmad has seen [Bra. G.] since the summer of 2014.

25. In or around July 2014, Dr. Ahmad made a recommendation that [Bra. G.]'s visits with Mother be reduced to once a month as a result of behavior problems that relative caregivers were experiencing with [Bra. G.] after her visits with Mother.

* * *

29. Dr. Ahmad testified that [Bra. G.]'s behaviors improved after her visits with Mother were reduced to once a month. Dr. Ahmad testified that[,] after visits with Mother were reduced, [Bra. G.]'s anxiety got much better, and she was less nervous.

* * *

34. In regards to Mother's individual therapy and [participation with a Rehabilitation Services Provider ("RSP")], service providers testified that Mother's participation . . . has been inconsistent at least in the last year of the underlying CHINS causes.

35. Alicia Johnson, the DCS Local Liaison for Bowen Center, . . . testified that Mother was to attend RSP services twice weekly.

36. Johnson testified as to Mother's attendance in RSP services since May 2014. Mother's participation and attendance in RSP services was as follows:

    a. May 2014: 0 attended sessions; 1 cancelled session;

    b. June 2014: 0 attended sessions;

    c. July 2014: 0 attended sessions;

    d. August 2014: 0 attended sessions;

    e. September 2014: 0 attended sessions; 1 cancelled session;

    f. October 2014: 1 attended session; 1 cancelled session;

    g. November 2014: 0 attended sessions; 1 cancelled session; 1 no-showed session;

    h. December 2014: 0 attended sessions; 2 cancelled sessions; 1 no-showed session;

i.  January 2015:  0 attended sessions; 1 cancelled session;

j.  February 2015:  2 attended sessions;

k.  March 2015:  1 attended session;

l.  April 2015:  1 attended session;

m.  May 2015:  3 attended sessions; 1 no-showed session.

37.  Mother was completely absent from RSP services from May 2014 through September 2014.

38.  Amanda Freiburger . . . is Mother's rehabilitation service provider . . . through the Bowen Center, and she has worked with Mother since Fall 2013.

39.  Freiburger works with Mother on such things as budgeting, parenting, obtaining suitable housing, financial stability, obtaining her GED, and employment.

40.  Mother attended GED classes in Fall of 2013, but she never obtained her GED.

41.  Freiburger testified that Mother's participation in services has been "up and down."  Freiburger observed that Mother would tend not to engage in services when her personal life [wa]s going well and would re-engage when her personal life was not going well.  Freiburger used the example that[,] if Mother had a job, she would tend to be less engaged in services.

42. Mother has been living at the Lighthouse, an organization that provides transitional housing, in Columbia City, Indiana[,] for approximately five (5) or six (6) months.

43. Mother had been encouraged by DCS and services providers to consider living at the Lighthouse at least as of 2014.

44. Recently, Freiburger assisted Mother in preparing an application for shelter care plus, which assists those who have low income in getting . . . stable housing.

45. Mother is currently on the wait list for shelter care plus.

46. Freiburger testified that the . . . waiting period for shelter care plus could be anywhere from one (1) month to six (6) months.

47. Freiburger testified that Mother would need to focus on resolving her own issues before she would be in a position to have her children in her care.

48. Julie Shearer . . . is employed by the Bowen Center, and she is Mother's therapist.

49. Shearer has been Mother's therapist since July 2013.

50. Shearer describes Mother as a person who is in recovery and struggles with depression and anxiety.

51. Shearer works with Mother on abstinence, maintaining her sobriety, healthy relationships, and self-esteem.

52.  Mother was to attend individual therapy sessions once a week.

53.  [Mother] participated in therapy from July 2013 to May 2014, but she became inconsistent in attendance beginning in February 2014.

54.  Mother did not attend any therapy sessions with Shearer between May 2014 and September 2014.

55.  Shearer attempted to make contact with Mother.

56.  Mother re-engaged in therapy on September 17, 2014.

57.  Mother's participation and attendance in therapy since September 17, 2014[,] was as follows:

    a.  October 2014:  2 attended sessions; 4 cancelled sessions; 1 no-showed session;

    b.  November 2014:  1 attended session; 1 cancelled session; 3 no-showed sessions;

    c.  December 2014:  3 attended sessions; 1 no-showed session;

    d.  January 2015:  2 attended sessions; 4 cancelled sessions; 1 no-showed session;

    e.  February 2015:  2 attended sessions; 1 cancelled session; 1 no-showed session;

f. March 2015: 4 attended sessions;

g. April 2015: 3 attended sessions; 2 cancelled sessions;

h. May 2015: 3 attended sessions; 1 no-showed session;

* * *

60. Mother did not submit to drug screens with Shearer when she was absent from participation in therapy.

* * *

71. Throughout the duration of the underlying CHINS causes, Mother has had supervised visitations with the children.

72. Mother's supervised visitation began as goal-directed, a form of visitation in which the supervisor plays a more interactive role to assist Mother.

73. Mother's visitation transitioned to supervised, observation only, a form of visitation in which the supervisor does not engage in the visitation.

74. In April 2015, there was a Child and Family Team Meeting in which Mother's visitation was discussed. The team discussed transitioning Mother's visits back to supervised, goal-directed. Mother agreed to this transition.

75. The time of Mother's visitation also regressed. Throughout the underlying CHINS cases, Mother's visitations increased from one (1) hour visits to two (2) hour visits to four (4) hour visits and

then back [to] two (2) hours as a result of Mother's inconsistency in participating in services.

76. Throughout the underlying CHINS causes, Mother has never transitioned to unsupervised visitation with the children.

77. The CASA volunteer . . . recommends that termination of parental rights would serve the best interests of the children . . . .

78. FCM Chelsey Smith testified that terminating the parental rights of Mother would be in the children's best interests.

Appellant's App. at 18-23.

[4] In light of its findings, the court concluded in relevant part:

2. There is a reasonable probability that:

a. The conditions which resulted in the children's removal and continued placement outside the home will not be remedied by the parents;

b. That continuation of the parent-child relationship poses a threat to the children's wellbeing.

*Id.* at 24. The court then terminated Mother's parental rights over the children. This appeal ensued.

# Discussion and Decision

[5] Mother appeals the trial court's termination of her parental rights over the children. We begin our review of this issue by acknowledging that "[t]he

traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[6] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, in relevant part:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> * * *
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's

judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[9] Mother's only argument on appeal is that DCS failed to demonstrate that "there is a reasonable probability the conditions which resulted in the children's removal and continued placement outside the home will not be remedied." Appellant's Br. at 9. In particular, Mother asserts that "the trial court failed to give sufficient weight to the efforts made by [M]other to achieve reunification." *Id.* at 6. That is, Mother asserts that the trial court's termination order is clearly erroneous because the court did not "take into account [Mother's] fitness at the time of the" fact-finding hearing on DCS's petition for the termination of Mother's parental rights. *Id.* at 9.

[10] Mother's arguments are not well taken. First, she does not challenge the trial court's alternative, and equally valid, basis for termination on the grounds that continuation of the parent-child relationship posed a threat to the well-being of the children. *See* I.C. § 31-35-2-4(b)(2)(B)(ii). Having failed to challenge this independent basis for the trial court's order, Mother has waived this argument, and we are obliged to affirm the trial court's order accordingly. *In re L.S.*, 717 N.E.2d at 209.

[11] Second, Mother's waiver notwithstanding, her challenge to the trial court's order under Indiana Code Section 31-35-2-4(b)(2)(B)(i) is merely a request for this court to reweigh the evidence. Mother does not challenge DCS's evidence, the court's factual findings, or the court's reliance on those findings in its conclusions. Rather, she asserts only that the court "failed to give sufficient weight" to certain evidence Mother deems more favorable to her than the evidence the court relied on. Appellant's Br. at 6. We will not reweigh the evidence on appeal. *In re D.D.*, 804 N.E.2d at 265. We cannot say that the trial court's order is clearly erroneous.

[12] Affirmed.

Riley, J., and May, J., concur.